All rise. Please be seated. Good afternoon. Our first case on this afternoon's docket is the case of Bradley et al. v. Sears, Roebuck & Co. And we have Gregory Ostfeld arguing for the appellant, and John Campbell arguing for the advocate. So you may proceed, Mr. Ostfeld. Thank you, Your Honor. May it please the Court, my name is Greg Ostfeld, looking at counsel's table as Tanisha Jones, and we represent the defendants in this case, Sears, Roebuck & Co. We are here today on review of the class certification order that was entered by the circuit court, which Sears contends was erroneously entered. We've raised a number of issues in our written submissions to the Court. If it pleases the Court, what I'd like to do today is focus on two of the issues that we raised in our briefs, which we view are central illustrative errors of defects in the circuit court's class certification order, and my plan is to rest on our submissions as to the remaining points of error raised in our briefs, unless the panel has specific questions on those issues. The two issues that I'd like to focus on today are, first, the circuit court's error in certifying a statewide class of Illinois citizens in the absence of a viable class-wide theory of actual injury as required by the Supreme Court's decision in Avery v. State Farm, and, second, the circuit court's error in finding that common issues predominate over individual issues in this case in the face of undisputed evidence that each class member's waterline installation will need to be examined on an individual basis in order to determine whether it was properly or improperly installed. This case is about waterline installations. When a customer purchases a refrigerator with an ice maker from Sears, Sears offers to arrange a waterline installation in the homes of customers who do not already have a waterline in their homes, and Sears has a network of independent contractors around the country who perform these installations for customers who choose to purchase that option. The plaintiffs both purchased waterline installations from Sears, and they're both Illinois plaintiffs, and they contend that their waterlines were improperly installed because a non-licensed plumber, or an individual who was not a licensed plumber would be a better way of saying it, and this installer used a device called a saddle valve to install the installation, to install the waterline. The plaintiffs contend that both of these practices, the use of an individual who was not a licensed plumber, and the use of a saddle valve are illegal under Illinois state law. Do you contest that? I'm sorry? Do you contest that? Your Honor, for purposes of the argument today, I'd be willing to acknowledge that I think there is a likelihood that the legal finding will be that saddle valves are not permitted under the Illinois Plumbing Code, and that the use of licensed plumbers is required to perform plumbing work, which this may be under Illinois state law. That is not an issue that's been conclusively resolved. But is the plumbing code part of the record? The plumbing code, the provision of the plumbing code that is at issue is part of the, I believe is an exhibit or is at least recited accurately in the plaintiff's complaint. Is the plumbing code different from the BOCA code, or is the BOCA code part, is the plumbing code part of the BOCA code? Which I think Illinois uses the BOCA code, don't they? Your Honor, I actually don't know the answer to that. There may be some testimony on that in Mr. Lee's testimony. He was the plaintiff's, the plaintiff's call was the plumbing expert. I know there's a couple of different model codes out there. I know the BOCA code is one of them. I can't recall Illinois chose one of them. But we do have a copy of the code in there, so we got it in our record. The provision at issue is in the plaintiff's complaint. Okay. Is there a uniform fee that Sears charges? There's not a uniform fee. Sears charges a range of prices varying by region, by store. The range of prices that's at issue in this case goes from $79.99 to $139.99, I believe was the testimony that we have. Okay. So the whole class would fall within that group there, right? It's possible that the prices have gone up in recent years. This is based on evidence that came down in about 2005, 2006. But most of the class members would fall within that range, yes, Your Honor. The circuit court certified a class of all Illinois citizens who purchased a waterline installation from Sears between February 10, 1996 and the present. The first error that we believe exists with the certification of that class is that we have a class of essentially uninjured class members. There is no class-wide theory of actual injury as required by Avery. I think it bears mentioning at the outset that out of the thousands or tens of thousands or plaintiffs contend 50,000 class members in this class, Sears has received complaints through this litigation from exactly two individuals who purchased waterline installations from Sears, the two named plaintiffs in this case. Of those two individuals, one of them, Ms. Morris, testified that her installation has not leaked, that her ice maker has worked fine, and that she is satisfied with the performance of her installation. So we're really talking about one dissatisfied customer out of a putative class or out of an alleged class of 50,000 class members. That's the essence of the first error that we're raising. We're dealing with a class, the vast majority of whose members have not suffered any actual injury. You need an actual injury to state a claim under Avery. Now, at the trial court level, the plaintiffs offered two theories to attempt to meet the injury requirement under Avery. And Avery incidentally addresses both breach of contract and consumer fraud. So it's holding as good as to both theories that have been asserted in this case. The two theories before the trial court were a cost of repair theory and a risk theory. The cost of repair theory essentially argues that the injury that the plaintiff class has suffered is the cost that it would take to replace an alleged defective installation, the saddle valve installation, with an alleged proper installation. The risk theory argues that the installation of a saddle valve in and of itself is an injury to the plaintiffs because these saddle valves carry a higher risk of failure and other associated risks that you would not get with a more appropriate installation or an installation that is code compliant. Was there a health issue involved as well? The plaintiff's plumbing expert, Mr. Lee, testified that there is a greater risk of contamination of the water supply through the use of saddle valves. He also acknowledged that he's not aware of any actual instance where, as a result of the use of a non-licensed plumber or a saddle valve, that the water has actually been contaminated. The Sears plumbing expert testified that, you know, total water is clean and even if the valve leaks, the bacteria doesn't travel back up through the leak into the water pipe. So he suggested that the alleged health risks aren't really there. But there is testimony from a plaintiff's plumbing expert who said that there is at least a theoretical health risk associated with the use of saddle valves. The problem with both of the plaintiff's theories at the trial court level is that they were both rejected by the Supreme Court in Avery. The cost of repair theory is essentially identical to the installation theory that was offered by the plaintiff class in Avery. As your honors may well be aware, the Avery plaintiff class dealt with the practice of State Farm of specifying non-original equipment manufacturer parts to replace original equipment manufacturer parts following a traffic collision. But those parts wouldn't be in violation of any law, would they? The parts, the non-OEM parts in Avery were not alleged to be in violation of a law. They were alleged to be categorically inferior to the OEM parts. That was the theory of the plaintiff class, is that these were categorically inferior parts. So they attempted to assert two theories based on the categorical… Is there anything in the record to establish why saddle valves are against the law for use in Illinois? Your honor, there hasn't been any evidence introduced specifically on why Sears chose to adopt the prohibition on the use of… on why Illinois chose to adopt the prohibition on the use of saddle valves. There is language in the plumbing code that says saddles shall not be used to connect to a potable water line. Presumably because of health reasons? I don't know that that's the reason. Well, if it just applies to potable water, wouldn't that be a conclusion? That's one possible conclusion. But the problem, what appears to be something that both sides agree on, is that saddle valves have a higher likelihood of leaking than if you sweat in a valve. So the leaks appear to be the biggest problem associated with saddle valves, and particularly with what are called self-piercing saddle valves, where you attach it and screw it into the pipe. And that's not a problem for non-potable water? Well, your honor, I think it's more… I don't know if saddle valves are prohibited. I can't recall if they're prohibited for the use of non-potable water. But the non-potable water lines tend to be larger water lines. So when you're dealing with a saddle valve in that context, what you're dealing with is a very large valve. There's drilling involved. The valve gets often welded on. So I think the risk of leakage is lower when you're dealing with larger non-potable water lines. I honestly don't know. There is not the equivalent of a legislative record that tells us why the model plumbing code that Illinois adopted prohibits the use of saddle valves, whether it's leak-related or health-related. There is no evidence in the case that there have been health-related problems that have manifested in Illinois as the result of saddle valves in some areas. The cost-of-repair theory that the plaintiffs have offered in this case is essentially identical to the installation theory that the Supreme Court rejected in Avery. In Avery, the plaintiffs attempted to do a certain injury based on the cost of replacing the inferior non-OEM part with the proper OEM part. And the Supreme Court rejected that on the grounds that that's not an actual injury. What the court found is that it's far too speculative because, first, unless the non-OEM part fails to accomplish the function for which it was applied, there isn't an injury that arrives from it, so you don't need to replace the installation. And secondly, even if you do have to replace the installation, to determine what it would cost to replace the non-OEM part with an OEM part turned on far too many variables to call it a common issue. Both of those defects are also in existence here. If, as you have with Ms. Morris, if you have a saddle valve installation that is functioning properly, that is allowing the ice maker to work and that is not causing any problems, there have been no leaks, there have been no failures, then there's no need to replace the installation. Ms. Morris testified that she's satisfied with her installation. Even if you do need to replace the installation, it is undisputed that there are a number of different factors that will determine what the cost is to replace the installation. So as the Supreme Court found in Avery, it's not an appropriate or viable theory of actual class-wide injury. Now, if one were to go put their house on the market, do you think they'd be required to disclose that they have a plumbing violation? Your Honor, that's an excellent question. And it gets to, I think, a real core issue in this case. I don't know if there would be an obligation to disclose it. Certainly, you would expect that inspectors would come in and would take a look at the house before it gets sold. And, in fact, there is testimony in this case from Jeffrey Hewings, the demographics expert that Sears introduced, who testified that a large number of class members, it's a statistical certainty that a large number of class members, quite possibly a majority of class members, have moved since they had their satellite installations performed. I think that demonstrates the flaw in the class-wide theory of injury here. If these individuals moved and did not suffer a loss of value in their homes when they moved, not only were they not injured by the waterline installation, even assuming it was an improper installation, but they will never be injured by the waterline installation because they're not in the home anymore. Or there's this entire group of class members who have left their homes, who have sold their homes, where there is no evidence, not a whiff of evidence in the record, to show that any of them lost value in the sale of their homes as a result of the alleged improper installation. And consequently, these class members have not been and never will be injured. That demonstrates the flaw in the second theory, this risk or danger theory of damages that the plaintiffs have propounded. Like the specification theory in Avery, the basic claim here is that the categorical inferiority of this form of installation is such that there is somehow an intrinsic injury in even having the installation performed. But what Avery found is that's not enough. There has to be some material harm. There actually has to be the manifestation of an actual injury to the class member. Can't we presume that because you just admitted that it's illegal to do this? Your Honor, I don't think so. That's the theory that the plaintiffs presented in their appellate brief here, is that somehow an illegal installation constitutes an intrinsic injury, that there's some presumption of injury that comes from that. There's not a single authority that's been cited to show that the illegality of the installation constitutes injury. And there's a problem with the reasoning behind it. And you can see this if you look at the analysis in Avery. There, the court did discuss the fact that these non-OEM parts were not illegal, that they were just alleged to be improper. And it found that if the non-OEM parts had been illegal, that might be enough to get you past the deceptive task or practice component of the consumer fraud analysis. If an illegal installation were performed, it's possible that plaintiffs could meet the deceptive act or practice component, because purchasing an installation and receiving an illegal installation without being told that fact, that could be deemed deceptive. But a deception is not the same thing as an injury. If this plaintiff class was deceived, but their water lines have not leaked, their water lines have not failed, they've suffered no economic cost, they've suffered no economic harm, what's the injury? If they've sold their homes and they've received the same price that they would have received without the improper installation, again, how have they been injured? And I think the analysis of Avery is crystal clear. There's no injury under those circumstances. Does Sears – I don't know whether this was in New York or elsewhere, but does Sears still have this same policy of installing ice makers, refrigerators like this, with non-licensed plumbers and by the use of saddle valves? Well, Your Honor, that actually gets into the second theory that I wanted to present today. The issue is even if the plaintiffs have presented a viable theory of class Y damages, and we contend that they have, even if they did, they have not shown that the illegality of these installations can be proven on a class Y basis. The specific answer to your question is Sears has never had a policy of using non-licensed plumbers or using saddle valves. Has it ever had a policy of using licensed plumbers? No. What Sears' policy is is Sears hires independent contractors. It's undisputed on the record. Sears uses independent contractors for these installations. Approximately 50 independent contractors have performed these installations in Illinois during the class period. These independent contractors are contractually obligated under their contracts with Sears to follow all applicable codes, laws, regulations, owners' manuals, and so forth. Because of the vast variance in different codes, laws, and regulations around the country, Sears doesn't have the capacity within its relatively small installation department to track the individual state and municipal code requirements of each jurisdiction in which it performs installations. So it puts that responsibility on its independent contractors. Of course, if it finds out that a contractor hasn't been following that obligation, the contractor would be subject to disciplinary action up to and including termination of the contract. So Sears expects the independent contractors to utilize plumbers, licensed plumbers? Sears expects its independent contractors to follow the law. Which requires licensed plumbers? For purposes of this appeal, yes, the law requires the use of licensed plumbers. So they expect their independent contractors to use plumbers? Sears expects its independent contractors to use plumbers where the law requires that. And what's happened since this litigation has begun is that Sears has reinforced with its contractors that you are expected to follow the law and to the extent that the law requires the use of licensed plumbers, you are expected to use licensed plumbers to perform these installations. Again, the contractors select their own means, methods, and personnel. Do they also expect the independent contractors not to use saddle valves? If saddle valves are illegal, they absolutely expect independent contractors not to use saddle valves. And in Illinois, it certainly appears that saddle valves are illegal. As an example, in Massachusetts, saddle valves are unequivocally illegal and blind licensed plumbers are required to perform the work, and that's exactly what happens in Massachusetts. Presumably that's what happens here in Illinois too. That's our expectation. Why are you equivocating when you're talking about Illinois and you were very clear about Massachusetts? Well, Your Honor, I'm only equivocating because there's been a full investigation in Massachusetts that hasn't taken place in Illinois, although it is my understanding that Sears has now confirmed with its existing contractors in Illinois that they are using licensed plumbers and that they are not using saddle valves. So that is my understanding. That's why I asked you at the very beginning what the cost was because there's been an argument here that if you use licensed plumbers, you're going to get up to $400, and anybody that knows about what it costs to hire a plumber or anything else knows it's probably going to be more than $79 to $129 or whatever you said. Your Honor, there is that argument that's been raised. I think the plaintiff's theory is how they bridge from the single subcontractor who performed both named plaintiff's installations in this case to argue that it is somehow a statewide practice to use saddle valves and non-licensed plumbers. So Sears thinks that they're going to be able to hire a licensed plumber to do non-saddle valves for $129 or less. Not only do we think that, but that appears to be the case. Okay. What the plaintiffs are basing their price theory on is the testimony of their plumbing expert, Tom Lee. It certainly seems to be the case that Mr. Lee would not have performed a waterline installation for the prices that Sears charges. But Mr. Lee's testimony was that he is familiar with the prices that are charged by union plumbers in southern Illinois because those are the plumbing contracts that Mr. Lee, who owned his own plumbing company, negotiated. He also acknowledged that the price can vary dramatically based on the region and based on other factors like the distance that one needs to travel to get to the work site, the site conditions, whether the plumber is union or non-union. Mr. Lee readily knows that a lot of factors can influence the price of performing an installation of this type. And Mr. Lee acknowledged that to the extent that he gave testimony regarding regions outside of southern Illinois and plumbers other than union plumbers, his estimates were ballparks and they were prices that he was assuming. That's at page 84 of Mr. Lee's deposition testimony. There is no evidence in the record. You'll have the opportunity to rebuttal. All right. Thank you. Mr. Campbell. Good afternoon. Please, the Court. I'd like to take the opportunity first to address a number of questions I heard asked by the Court that at least to my hearing there's still some information you need. But first let me just sort of talk about the elephant in the room. Sears is advancing a theory that's never been accepted by any court in Illinois or any court I'm aware of in the country, and that is that somehow if you charge someone for an illegal service with an illegal part, there might not be any damages. That is something that I do not believe the law embraces in Illinois. I'll point you to two simple principles. One, I wonder how far back has Illinois recognized the idea that if you have money you shouldn't have, you should give it back. And I think we'd agree if you charge someone for something that's illegal, you would have to give it back. That's a case called Taylor v. Taylor, and it's an 1858 case. In that case, the Court said if you have money and you've received it from someone and it's unjust to keep it, you should return it. And so if we don't have a theory of law to get it back, we'll have money handed to us. I'm having a little problem like we started, I guess, when we were talking back and forth about illegal. And is it a misdemeanor? Is it a misdemeanor? To violate the plumbing code? Your Honor, my understanding is that it could be a misdemeanor, certainly. Does it say that in the code? I believe it is, Your Honor, yes. I'm not aware of a prosecution. I can't tell you if it's been prosecuted. What I can tell you is the plumbing code is crystal clear on two things. You need plumbers to do plumbing, and you need hard plumbing like a T-valve, sweated in, rather than a saddle valve. You're assuming copper, too? Yes. And I would suggest this. If you have galvanized, are you allowed to use a saddle valve? No, Your Honor, you're never allowed to use a saddle valve. And let me just clear up the record on that since we're talking about it. Let me talk about their expert, Mr. McGuire, who's a very honest expert. I took his deposition. Mr. McGuire agreed with our expert in almost every regard. He stopped me and said he disagreed in one, and that was he said, I think your expert understated the danger of having non-plumbers in people's homes hooking up potable water. His position was, two, one, you can cross-contaminate if you hook to the wrong line, and you can poison a neighborhood. These are his words. And, two, if someone were to wage a terrorist attack on the United States, his position was the best way to do it would be through the water supply. There is no dispute that these leak. That's clear, that they can cause property damage. There's also no dispute that having non-plumbers hooking up to people's water supplies poses real health risks. Sears' argument, I think, would be hard to advance if we were talking, for example, about knob and tube wiring. It's another example of something that sometimes works. Sometimes works for a long time. It's illegal. And if you hire an electrician to put knob and tube wiring in your home and they put knob and tube wiring in it and they said that would be $5,000, you'd say, I'm going to pay it. It's illegal. It doesn't meet code. If they said, well, but it works, you'd say it's illegal. Can we back up? And what are the damages? Well, Your Honor, it's a good question, and here's the answer. There are two theories of damages that exist. I'm sorry, I don't mean to patronize you. It was a good question. I'd like to ask. Our theory is, Your Honor, that at a minimum, the damages for a total breach of contract are restitution. That's in a case called McBaldwin v. DiMaggio, 364 Illinois Ave. 3rd. That's at page 14. And what the court says there is at a minimum, and it's alternative, it's the plainest alternative, if you have a total breach of contract, which an illegal service would clearly be, the minimum damage there is restitution, which means this idea that there's no actual damages and we can't find them, at a minimum, we know what they pay, and we know that Sears does not have a right under Illinois law to keep money obtained by an illegal installation. Now, the second measure of damages that courts recognize at a plainest choice, it's an election of remedies, really, is the benefit of the bargain. And what we know about the benefit of the bargain is we measure it at the time of the bargain. Can we back up just a little bit? Certainly, Your Honor. You jumped over the question. I can't understand how you could poison the neighbor. And the only way I can figure it is, now, on your hose outlets on your new homes, you have to have an anti-siphon, right? Yes. So the only way I think you can get your neighbor was if you didn't have an anti-siphon on your ice maker. So then you'd have to have poison ice cubes in order to get your neighbor. Is that correct? Is that his theory? That's not his theory. And then the ice cubes wouldn't have to freeze. So you'd have to have power failure, poison ice cubes, anti-siphon, no T valve, no SL valve, a T, and you'd still get your neighbor. My understanding of Mr. McGuire's position was that when you go down in the basement, if you don't know what's potable and what isn't. All of it is potable in the new house, isn't it? Well, in a brand-new home, in the home I own in Collinsville, Illinois, you've got waste pipe in the same place as water pipe. And Mr. McGuire, as he explained to me, So you're going to hook onto your 4-inch main. In Collinsville, it's probably cast iron above the ground, old rule, new rule, plastic. So you're going to tap into a 4-inch plastic line and not know that's a water line? Well, Your Honor, that sounds, I think, preposterous to you. The risk is when we send people in who don't have the knowledge you have about plumbing or that maybe some of us would if we'd done it ourselves, yeah, that's absolutely the risk, is that you don't know which water line is which and you hook them up wrong. So don't flush the toilet and then won't spray it. Yeah. I mean, the reason we have a plumbing code, I think, is because people who know a lot more about plumbing than I do decided what should be legal and illegal. And I think the clear line here is whether Sears likes what's legal or illegal, it is illegal to use a non-plumber and it's illegal to use a saddle valve, and that's not disputed. Let me just address head on, so as far as actual damages, when you perform an illegal service, you breach the contract, restitution is the minimum, benefit of the bargain, meaning what would it have cost for a proper installation, the benefit, versus what I actually got is another measure of damages. Both of those exist for every class member at the time of the bargain. Would quantum merit be a factor in here? I think it could be a theory that's advanced. That the class members got some benefit out of the two? Your Honor, respectfully, I would suggest, as I talked about not in two, the minute you have something in your home that means you're violating the code and that you pay for something that if someone discovers it is illegal and that you could be responsible for, I don't believe you've received any value. I think there's a significant difference between receiving an inferior or non-conforming product, your hot dogs and your brats, and receiving something that is fundamentally illegal under the code. Which is the aviary case. Yes, Your Honor. And if I could, I'm sorry, you're going to ask another question. The person that's using the ice maker, and couldn't you assume that all the people that are using Sears ice makers today that were installed by non-licensed plumbers using saddle valves that are still using this probably have no idea that it is, you know, against code. I'm not sure I think that it's criminal. It might be illegal. Just because it's illegal doesn't make me a criminal there. But against code, how are they harmed? Well, they're harmed because they have paid for something that's illegal. Much like if you paid for, again, something like knob and tube wiring. The answer is we can't measure, well, it's illegal, but it's okay because it hasn't hurt you yet. They have an ongoing problem in that home. Non-conforming, I mean, non-original parts. I mean, isn't there the analogy to non-original parts with aviary? Let me answer. I've got something that I'd like to share with the police and the court. I'm not a big fan of oars because, I don't know, everybody sees it differently. But the idea is you can pass on the reports of the law. You can bring it right up. I brought a chart by Avery and Bradley in this case because I believe that it's a central point and they advanced it forcefully. I want to address it to you head on. So this is an amendment to your brief? I was following an exhibit, Your Honor, but certainly if you'd like to take it as an amendment, it's nothing new. Is it in your brief? Yes, Your Honor. Every point that I'm going to make about facts is in the brief. In Avery v. State Farm, what we know is it was a case that was ill-conceived. And as a plaintiff's attorney, I hate to say it, but it was. If you plucked a member of the class out of Avery, here's the problems we have. First of all, it involved 48 states, allegedly all under Illinois law. We now know that doesn't hold water. It involved two named plaintiffs who didn't even have non-original parts and were complaining about non-original parts. The evidence from the installer showed that some people received original parts, like those plaintiffs. The evidence showed that even when you got a non-OEM part, sometimes it was better than the original part. The evidence showed that the work was performed by qualified individuals, and the defendant presented mountains of evidence to prove this, and the damages in Avery were, well, maybe they need to have it replaced, but we can't tell you who has the problem, and even if they have a non-conforming part, we don't know if it really hurt. That was Avery, and the Illinois Supreme Court told us what it thought, and I think I understand why. Now look at our case. Take any one of our class members. They're all from the same state. Both named plaintiffs have saddle ballots by non-plumbers. Let me back you up there. Yes, Your Honor. I know there was something in the brief about 11% of people moved. That's assuming the 11% only moved inside the state, or are some of the plaintiffs or members of the class going to be outside the state? Well, that was not our evidence. I believe they measured it by whether or not they moved out of the county. To my reading, I don't know if it told me how many moved out of state. So in your case, you include people that moved out of state. Certainly, but the damage would have been incurred in Illinois, which under Avery, what we know is the Illinois Code, the Illinois Consumer Fraud Act, will apply to people where the primary injury occurs here. So our class is limited to people who have had installations in the state. I know installations in the state, but they might not be here anymore. That's correct, Your Honor. That percentage estimate, wasn't that just based on demographic movement? It wasn't with respect to any identified plaintiffs? That's correct, Your Honor. It was not a study of this class. It was a study of demographics. A couple other things about our case. In Avery, we really didn't know who was hurt, and we didn't know how they were hurt, and we couldn't identify them. We didn't even know what contract they had. In this case, we have identical contracts with the identical language that says, quote, that Sears, let me just share it with you quickly, because we did hear about the contract, but I'll share it with you in a second. Here's what Sears says. Sears is responsible only, they limit their liability, for materials and installation furnished and arranged by Sears. So this argument, Sears isn't on the book. It's certainly a common question at the certification stage. It's right in the contract. Next promise, Sears promises, I authorize Sears, one, to arrange for a contractor, licensed where required by law. Sears commits to get a licensed contractor, and they commit to be responsible. So this independent contractor thing, I think, is gone. Now, in our case, we have people who, no matter what class member you pick, has an illegal installation by someone who's not licensed to do it, who had it occur in the state of Illinois, who has the same contract language I just read to you, and has measurable damages under a restitution or benefit of the bargain theory. And this isn't my position. This is Sears. We asked Sears' corporate representative, what if Sears became convinced today that the use of saddle valves for waterline installation violated the Illinois plumbing code? What, in your opinion, would Sears need to do in response? Here's the answer. Okay, in my opinion, and I've worked in stores as well as this position, that would have to be enforced unilaterally across the whole state with every retailer and every plumber who's installing waterlines. In order to do that, if I'm understanding the code, just that little piece that those types of valves are hard piping is the only way to do it, they would have to require a permit and then have to have a licensed plumber, which is a much higher rate than an appliance installer. That is going to take the bill to the customer close to $400. He goes on to say it's kind of long. This is the corporate representative for Sears when asked, what if he had to comply with what you just heard is the law? Well, it costs us $400. We know that Sears has never charged more than $139, and we know that only 66% of that goes to the installer. So Sears has admitted that it's never given an installer more than $100 to do what would cost $400 to do legally. That evidence supports, one, a common class. A jury could infer reasonably that that means we've got a problem with all these class members, unless we assume there are businesses out there that are donating their services as charitable work because they'd be losing money. Now, you heard, well, it could have been licensed plumbers doing legal installations. Here's the question to the corporate representative. Can you give me one example of an installation of a waterline in Illinois over the past 10 years that was done by a licensed plumber when that installation was purchased by a Sears customer from Sears? Answer, I cannot. Can we go back to the contract? Did they contract, though, to do license? What does the contract say about that? About licenses? License, yeah, license. The only thing I think they have about that is that they say, I authorize Sears, now they're putting it in a customer's language, to arrange for a contractor and then open paren, license where required by law, close paren. So it's licensed by required by law in Illinois? It is. So it says they're going to do that? It says that they're obligated to do it, and what we've presented is evidence they haven't. I can tell you, and it's in the record, that Sears, for instance, when they install a heater, water heater, they require the plumber to produce a license to Sears. They have a data system that tracks that license, and when it's coming up for expiration, they basically call out to these people and say, do you have a new license? What we found out is that when they install these saddle valves, these waterlines, they've never done that. And so Sears' position is, five years into the litigation, we're not sure if it's being done legally. Well, I can tell you that based on the price, it is our evidence it wasn't done legally. And second, Sears doesn't mention this in his brief in any length at all. We didn't just stop there. First of all, we talked to the corporate representative and said, can you just tell us of a legal installation? One, I think that would have helped Sears' position. No, I don't know of any. Well, can you tell us of one without a saddle valve? No, I don't know of any. So then we went to installers. I talked to a man named Jeff Brewer. He did installations for Sears in Missouri and Illinois for a decade. He testified about 20 a week for a decade. Question, you ever do one with a T-valve? No. You a plumber? No, I'm not. So we went to his boss, and we said, Mr. Feltman, how many installers do you have? Well, varies, three, four, five, six. How long have you been doing this? 12 years. Sir, are you aware of any installations that you've done for Sears that were done with a plumber without a saddle valve? No, I'm not. We always do them with saddle valves. We don't use plumbers. Is this in the record? It is, Your Honor. I have one question. I have a question. Is it in the record the date that the Illinois Code went into effect that says you can't use saddle valves? I don't think the date it began is, Your Honor. I can tell you that. Well, that's a question because was it 10 years ago? I think, and I'd let the opposing counsel be my judge. I believe at the trial court we discussed this matter, and the evidence was, and I think it would be in the transcript, that it has been in effect at least longer than our class. And that's my understanding, and that's my belief as I stand here today. I think that's right. What would you anticipate the damages per person to be? Well, I think, you know, if you're talking about benefit of the bargain, their expert said that up in Chicago it costs about double what it does in southern Illinois. He said, you know, it costs double what they're charging at least for a plumber to do it. And our expert said it costs about $200 everywhere but, as we know, Illinois kind of gets divided that way. And he said everywhere but Chicago is about $200. So you're saying about $300 a person? I think we averaged it. I think the other thing is the trial court's discretion. I think this is a merits issue that will be fought out. Individual damages, of course, don't defeat a class, but we need to be able to prove it. The second thing is if you can't make that workable, if for any reason as we move forward you can't make that workable, is there a suggestion you couldn't? What we know is that our election restitution is the minimum damage when you breach a contract wholly. And this, I think, if it's proven this is illegal, I believe it will be, and they did this every time, then they breached the contract. And at a minimum we know that the damages are then $79.99 to $139.99. You wouldn't ask them for specific performance than to go in and actually do it the right way? Your Honor, I don't think that's feasible. I mean, in a settlement, anything is. Why not? Well, in a settlement, anything is feasible, and I guess you could offer that option to people. At a damages stage, there will be people who have moved. And so, in my opinion, both because the law requires restitution or benefit of the bargain, which both don't have to do with sale or the second issue is if you require specific performance in every case, you might have a challenge. But you could give them the option, couldn't you? You certainly could. Now, that can be done if the class receives notice and they say, I'd like this or this. And I think you can even tell the class if you don't care, then, you know, I guess you don't have to have it fixed. Just like in every class case I've been involved in, if you send out the check and somebody says, I don't want the check, they don't cash it. I thought I read somewhere, and again, I could have cared about it, that there was a class action within the last few years or so regarding a stove or something, and part of it was to come in and put some coasters or something on the bottom of it to even it out or something like that. I'm familiar with that case. So, I mean, there was specific performance in that case. Your Honor, that was a settlement, as I understand it, at the end of the day. Okay. And what they did was they sent out notice to people that said, here's how your stove could tip. If you want to fix it, here's how you can fix it. If you don't, okay. And people were given that option. But that was in contact with the settlement. Yes, Your Honor. That's my understanding. That was settled. I think that was a case that Cryan Tillery in St. Louis handled in Madison County. You know, of course, in settlement, there are all sorts of flexible answers. If this case proceeds, though, Your Honors, I would say this. We have presented evidence from their corporate representative, from their expert, from our expert, and from the documents that support a class-wide theory of injury and a class-wide theory of damages. Sears has waved its hands, briefed this thing. I think they did a great job briefing it. What they haven't pointed to is a single shred of evidence that they've ever done this right or that anybody's received it. And that is, more than anything else, the primary distinction between this case and Avery. In Avery, there were tons of people who either didn't have a contract that said you can't have aftermarket parts, didn't have aftermarket parts, or had better aftermarket parts. In this case, Sears could be standing here winning an appeal. Real simple. And they would say, Judges, there's a pile this high of people with legal installations, and here's the licenses of some plumbers who went in and did it. In five years, they didn't produce one. Not one. We had the burden. We met it. This is an abuse of discretion. The trial court looked at thousands of pages of documents. It listened to evidence. It read decimals. And it said, I see a class of people that can be proven with common evidence, and I believe that if they prove their theory with this evidence, they'll prove a class-wide injury of an illegal installation by unlicensed people. It didn't abuse its discretion. Far from it. It relied upon the mountain of evidence we presented that was the overwhelming evidence in the case. And what it didn't do was dream up reasons to decertify a class based on Sears' suggestion that something else should have happened. We talked to the corporate representative and gave him every chance. You tell me when these legal installations happened. You know, we were three or four years into this case, and Sears didn't know how its installers installed water lines? I mean, the court asked that question. Have you checked on this? And the answer now, which is not in the record, is it's minor. Now they do it right. I have one question. I noticed in the briefs they talked about 50 installers. Where does that number come from? Did Sears know the number? Are there only 50 different installers in the state of Illinois? Yes, Your Honor. Sears produced a list. They sort their installations by installer. Well, could they be third party in a class action? That's a good question. If you only got 50, you could get 50. Right. We did not sue them. Sears has. And sometimes they sue Sears. So are they on this? No, Your Honor. In the underlying, there are separate insurance actions pending all over the state of Illinois right now about who covers, whether the contractors on the boat or Sears on the boat. Because they contracted, they said they'd follow all the codes. That's correct, Your Honor. Okay. Thank you. Thank you, Mr. Campbell. Mr. Osfeld, you have the opportunity to rebut. There's a few points I'd like to address. First is I want to deal with the testimony of Sears' corporate representative, because I think there's some important predicates to that testimony that were left out in Mr. Campbell's presentation. The corporate representative is Bernard Doman, who is the regional contractor manager for Sears Installers. And when Mr. Doman gave his testimony that the cost would go up over $400, he was operating under a hypothetical set of assumptions. The assumptions that Mr. Doman was asked to operate under are to assume that the current practice is that all installations are being done using non-licensed plumbers and that all installations are being done using saddle belts. And under that set of assumptions, if Sears became convinced that all of its current installations were illegal, what would have to happen? Mr. Doman then testified under that set of assumptions, what would have to happen is the contractors would have to do it right. They would have to use licensed plumbers. They would have to use the right method. And if the current price doesn't cover it, which under this hypothetical set of assumptions it wasn't, then the price would have to go up. Mr. Doman also testified, and I think this is an important predicate to the second set of testimony that Mr. Campbell cited. He also testified that he is aware that there are contractors in Illinois who employ licensed plumbers who couldn't perform these installations. That's at pages 46 to 47 of his testimony. The first set of the hypothetical assumption set is at pages 74 and 75 of his testimony. He said he's aware at least some of these contractor companies employ licensed plumbers. When he couldn't point to a single example, what he said was Sears doesn't track the individual means and methods of installation used by each of its contractors. It doesn't track which individual employee in each contractor performs each installation and what method of installation they use. So he, as the corporate representative of Sears, couldn't pull up a record from Sears and say this installation was done by a licensed plumber not using a saddle valve. But he also testified that the contractors do employ licensed plumbers. Now, at that point, Your Honor, it's the plaintiff's burden of proof to prove class certification. They say we haven't pointed to a correctly performed installation in Illinois. That's because we have 50 independent contractors who perform these installations. The plaintiffs have not deposed or interviewed a single other subcontractor or contractor other than the one subcontractor and the one contractor that were involved in the two named plaintiff's installations in this case. How many do they have to depose? Your Honor, I don't know how many would be sufficient. It would be our position that if you truly want to find out whether these installations were performed improperly, you need to depose each contractor and each subcontractor and inquire into the individual circumstances of each installation. That's why common issues don't predominate. But at a minimum, if they went out and deposed 10 contractors and all contractors said we use non-licensed plumbers and we use saddle valves, you know, they would reach a point where perhaps they could argue on a class-wide basis. So you think that 10 is a reasonable number? I'm just pulling a number out of the air, Your Honor. What I'm suggesting is what I think would happen is if they started interviewing and deposing these contractors, they'll find in a hurry that there is not a common practice across these contractors. There are contractors who use licensed plumbers and who don't use saddle valves. And at that point, it is clear, you know, once you've got one contractor who's doing it right and one contractor who's doing it wrong, what becomes perfectly clear is that we're dealing with an individual issue at that point. And you have to go to each installation to determine whether it was properly installed. But what I'm confused about is if the range of charges was from approximately $80 to $140 and there's already been testimony even by the corporate representative that you can't have a licensed plumber do the legal job within those parameters, don't we deduce that they're not licensed plumbers? Your Honor, that's a plaintiff's argument, but that's not what the licensed plumbers said. That's not what the corporate representative's testimony was. His testimony was under your hypothetical set of assumptions where we have to assume that the current price isn't sufficient to cover a proper installation, then, of course, it would cost more. But he didn't adopt that hypothetical set of assumptions. He said the opposite. He said we do hire licensed plumbers. There are contractors who hire licensed plumbers. That is in the record in this case. Regarding this chart on Avery, if Your Honors can take the submission if you like, I would point out that the brief that was filed by the appellees in this case didn't read a word about Avery. So this is an entirely new submission in the case. And I would suggest at that point that it shouldn't be considered. But obviously, Your Honors have discretion on that. It is certainly the case that class actions can be an effective tool to deal with situations where a large group of people have all been injured in the same way. But here we have a class of uninjured members, and it is not possible to show that all or any have been treated in the same way as the name implies. We submit that the order should be reversed. Thank you, Mr. Osfeld. Thank you both for your briefs and arguments.